☐ ORIGINAL

FILED

AUG 3 1 2009

RICHARD W. WIEKING
NOAH CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

OA 91   Criminal Complaint

# United States District Court

**NORTHERN**     **DISTRICT OF**     CALIFORNIA

UNITED STATES OF AMERICA
V.
CECILIA CHAO

**CRIMINAL COMPLAINT**

Case Number: 3   09   7 0 7 8 5

BZ

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state that the following is true and correct to the best of my knowledge and belief. On or about September 9, 2003 in San Francisco County, in the Northern District of California defendant(s) did,

(Date)

(Track Statutory Language of Offense)

knowingly execute, or attempted to execute, a scheme or artifice – (1) to defraud a financial institution and (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations or promises

in violation of Title _____ 18 _____ United States Code, Section(s) 1344 .

Maximum Penalties:
30 years imprisonment, $1,000,000 fine, 5 years supervised release, $100 special assessment.

I further state that I am a(n) Special Agent, FBI and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT MADE A PART HEREOF.

Continued on the attached sheet and made a part hereof:    ☒ Yes    ☐ No

Approved
As To
Form:  Jeffrey Finigan
     AUSA

Jason Richards, Special Agent, FBI
Name/Signature of Complainant

Sworn to before me and subscribed in my presence,

August 3 , 2009
Date

at   San Francisco,     California
     City and State

Hon. Bernard Zimmerman     U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

UNITED STATES DISTRICT COURT    )
    )    ss. AFFIDAVIT
NORTHERN DISTRICT OF CALIFORNIA    )

AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT
CHARGING CECILIA CHAO WITH BANK FRAUD
IN VIOLATION OF 18 U.S.C. § 1344

I, Jason Richards, declare and state as follows:

## I.   INTRODUCTION

1.    I am a Special Agent with the Federal Bureau of Investigation ("FBI") in San Francisco, California. I have been a Special Agent with this agency for ten years.

2.    I submit this affidavit in support of a complaint and application for a summons for CECILIA CHAO ("CHAO") for bank fraud in violation of Title 18, United States Code, Section 1344.

3.    The facts set forth in this affidavit are based in part on information that I have learned from the following: conversations with other law enforcement agents, including other agents assigned to this investigation; a review of documents including bank records, loan files and title company documents; and information provided by a cooperating individual ("CI") and other individuals involved in the scheme described herein, some of whom have been prosecuted and some of whom have only been interviewed.

4.    Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause for the issuance of an arrest warrant for the defendant, I have not described all the relevant facts and circumstances of which I am aware.

1

## II.  STATEMENT OF PROBABLE CAUSE -- 18 U.S.C. § 1344

### A.    Applicable Statutes

5.      Pursuant to Title 18, United States Code, Section 1344, whoever
" knowingly executes, or attempts to execute, a scheme or artifice – (1) to
defraud a financial institution or (2) to obtain any of the moneys, funds,
credits, assets, securities, or other property owned by, or under the custody
or control of, a financial institution, by means of false or fraudulent
pretenses, representations or promises" is guilty of bank fraud.

6.      Pursuant to Title 18, United States Code, Section 20, the term
"financial institution" as used in Title 18, United States Code, Section
1344, includes FDIC-insured depository institutions such as Wells Fargo
Home Mortgage, Inc.

### B.    Background

7.      In January 2008, the FBI received information from a Wells Fargo
Bank investigator indicating that between December 2006 and August
2007, Wells Fargo Bank funded at least eight mortgage loans for residential
property in the Bay Area based on loan applications prepared, verified, and
submitted by three individuals employed by a San Francisco-based
mortgage origination company known as United Investments Company
(hereafter, "United Investments").  After funding these loans, Wells Fargo
Bank subsequently determined that all eight loans had been funded based
on loan applications containing materially false information that overstated
the creditworthiness of the borrower.  For example, all eight of the loan
applications materially misstated the borrowers' assets.  Of the eight loans
determined to have funded based on loan applications containing materially
false information overstating the creditworthiness of the borrower, five had
been submitted to Wells Fargo Bank by an individual who is now
cooperating with the government's investigation ("CI").

8.      As an example, one of the eight loans referenced above and
submitted by CI was a refinance loan in the amount of $544,000 funded by
Wells Fargo Bank on or about May 10, 2007, for property in San Francisco.
I have reviewed the loan application and accompanying documents, which
state among other things that the borrower worked for Apex Technology
for three years and earned $11,578 per month.  The loan application also
listed an E*TRADE account in borrower's name that purportedly held
$43,091 in assets.  The loan application was accompanied by documents
purporting to be a W-2 form relating to borrower's employment with Apex

2

Technology and an E*TRADE account statement in borrower's name with a balance of $43,091. I interviewed the borrower, and s/he advised me that s/he never worked for Apex Technology and did not have the represented E*TRADE account.

## C.   Information Provided By Cooperating Individual ("CI")

9.      On or about April 30, 2009, CI was arrested pursuant to a warrant issued by Magistrate Judge Bernard Zimmerman based on a complaint and affidavit sworn by me on April 28, 2009. After CI was arrested and advised of Miranda rights, s/he agreed to waive his/her rights to a speedy arraignment and to cooperate with the government's investigation. During a meeting held on April 30, 2009, at which CI was represented by counsel, CI voluntarily provided information to agents of the FBI. The information provided by CI has been substantially corroborated by information provided by the borrower who procured the loan through CI as described above in paragraph 8, by consensually-recorded calls between CI and others involved in the scheme described herein, by other individuals who were involved in the scheme described herein (some of whom have been prosecuted and some of whom have only been interviewed), and by loan files and bank records gathered during the course of the investigation

10.     In sum and substance, and among other things, CI stated that s/he worked for United Investments for approximately ten (10) years as a loan agent. Danny Chou was one of the owners who controlled United Investments while CI worked there. According to CI, the unlawful business practices and fraudulent scheme described above were perpetrated by United Investment employees and owners on a regular basis throughout the ten years that s/he worked for the company. CI stated in sum and substance that s/he and the other individuals working for United Investments were loan agents who helped prospective borrowers obtain mortgage loans to purchase real estate. CI and the other individuals working for United Investments were typically paid fees for the mortgage loans they brokered at the time the loans closed. The fees were split between United Investments (which typically received 10%) and the loan agent (who typically received 90%).

11.     CI also stated that s/he and the other loan agents of United Investments routinely prepared and transmitted loan applications, and other documentation, to mortgage lenders purporting to accurately represent the personal and financial information of prospective borrowers. However, CI and the other loan agents of United Investments routinely inflated the creditworthiness of the prospective borrowers by falsifying personal and

financial information that was material to the mortgage lenders in making their lending decisions. For example, among other things, CI and the other loan agents at United Investments routinely prepared and transmitted to the mortgage lenders false and misleading information concerning the employment, income and assets of the borrowers.

12.     In addition, CI stated that s/he and the other loan agents routinely procured false and forged documents such as W-2 forms and pay stubs. CI explained that s/he and other loan agents at United Investments routinely faxed a form request to the person who created the false documents specifying what false documentation they wished to procure. That person would then create the false documents and transmit them back to United Investments. CI and the other loan agents then used these false documents in support of falsified loan applications to mortgage lenders. According to CI, CI and the other loan agents understood that the mortgage lenders would not approve the requested mortgage loans if they provided accurate information relating to the borrowers' income, assets and employment.

13.     CI reviewed the loan application and supporting documents described above in paragraph 8. CI advised me that the loan application and supporting documents are fraudulent. CI advised me that the borrower named in the application did not work at Apex Technology and did not possess an E*TRADE account as represented in the application and by the supporting documents. CI advised me that s/he obtained the false W-2 form and E*TRADE statement and submitted them with the fraudulent loan application in order to defraud the lender.

14.     In addition to the false document aspect of the scheme described by CI, CI also stated that s/he and other United Investments employees regularly utilized the services of additional individuals to verify falsified employment documents for United Investment clients. Those individuals are referred to herein as "VOEs." United Investments employees had a list of companies they used when submitting falsified loan applications for clients whose true employment would not qualify for a loan. CI and other United Investment employees needed the VOEs because lenders contacted employers to verify prospective buyers' employment. This part of the scheme was planned to work as follows.

> a.  First, CI would determine that a client's employment was insufficient to qualify for a loan.
>
> b.  Second, CI would falsify the loan application by stating that the client worked for Apex Technology (or any one of

4

approximately another dozen company names used by United Investments employees) and earned a certain monthly income.

c.  Third, CI would notify (typically via facsimile) the VOE for Apex Technology (or whatever other company was used for that particular client) that they would get a call from a certain lender regarding a certain United Investments client and the VOE needed to advise the lender, falsely, that the client worked for Apex Technology.

d.  Fourth, the VOE would receive a call from the lender inquiring whether the United Investments client worked for the stated company and the VOE would tell the lender "yes," knowing that that information was false.

e.  Fifth, CI would send the VOE a payment for this service usually in the range of $50-200.

## D.  Cecilia Chao's Actions as a VOE for United Investments

15.    According to CI, one of the companys utilized by CI and other United Investments employees for purposes of falsifying employment information on loan applications as described above in paragraph 14 was Tenli Consultants.  Defendant CHAO owned Tenli Consultants.  In addition to CI's statements, I have reviewed loan files that were seized from United Investments on May 1, 2009, pursuant to a search warrant signed Magistrate Judge James Larson.

16.    For example, I reviewed a loan file for borrower E.L. and the Uniform Residential Loan Application therein.  E.L. obtained a mortgage loan from Wells Fargo Home Mortgage, Inc. through United Investments on or about September 9, 2003, by submitting documents to Wells Fargo Home Mortgage, Inc. representing that E.L's employer was Tenli Consulting Co., which was located at an address now known to be CHAO's home address.  E.L.'s application also represented that E.L. was earning $6,850 per month, and that E.L. had been employed at Tenli Consulting for 2.5 years.

17.    On August 10, 2009, as part of the ongoing investigation into United Investments widespread and long running mortgage fraud, I interviewed defendant CHAO.  CHAO told me that she met Danny Chou in 2000 when Danny Chou assisted her in refinancing her home.  CHAO

5

became friends with Chou and sometime between 2000 and 2003, Chou asked CHAO to tell banks that some of Chou's clients were employed with CHAO even though they were not because it would help get Chou's clients' loans approved. CHAO agreed to do so. In 2003, CHAO had a company, Tenli Consultants, which was not conducting any business and had no employees. CHAO thereafter received facsimiles from Chou with borrowers' names and identifying information, along with an alleged time period that they had been working for her business and an alleged monthly income. Whenever a bank called CHAO to verify the information on the facsimiles from Chou, CHAO would lie to the bank and represent that Chou's client was employed by her company. CHAO said she received several payments from Chou for performing this VOE service for Chou.

## III.    CONCLUSION

18.    Based on the foregoing information, I believe there is probable cause to believe that CECILIA CHAO knowingly and intentionally executed a scheme and artifice (a) to defraud a financial institution, and (b) to obtain moneys, funds, credits and assets owned and under the custody and control of a financial institution, by means of false or fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1344.

JASON RICHARDS
Special Agent
Federal Bureau of Investigation

SUBSCRIBED AND SWORN TO BEFORE ME
THIS 31 DAY OF August, 2009

BERNARD ZIMMERMAN
United States Magistrate Judge

6

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☒ COMPLAINT  ☐ INFORMATION  ☐ INDICTMENT  ☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location

**NORTHERN DISTRICT OF CALIFORNIA**

SAN FRANCISCO DIVISION

#### OFFENSE CHARGED

18 U.S.C. 1344 -- bank fraud

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: 30 years imprisonment; $1,000,000 fine; 5 years supervised release; $100 special assessment; criminal forfeiture

#### DEFENDANT - U.S

▶ CECILIA CHAO

DISTRICT COURT NUMBER

#### PROCEEDING

Name of Complaintant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form  JOSEPH P. RUSSONIELLO

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)  Jeffrey Finigan

#### DEFENDANT

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶
2) ☐ Is a Fugitive
3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction  ☐ Federal ☐ State
6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed?  ☐ Yes  ☒ No   If "Yes" give date filed

DATE OF ARREST ▶ Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶ Month/Day/Year

☐ This report amends AO 257 previously submitted

#### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☒ SUMMONS  ☐ NO PROCESS*  ☐ WARRANT

Bail Amount:

If Summons, complete following:
☒ Arraignment  ☐ Initial Appearance
Defendant Address:

28 Mariners Circle, San Rafael, CA, 94903

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: September 11, 2009  Before Judge: Bernard Zimmerman

Comments: